**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**HYUNDAI MOTOR FINANCE COMPANY**                                        **PLAINTIFF**

**VS.**                                    **4:06CV01714-WRW**

**MCKAY MOTORS I, LLC &**
**JOHN P. MCKAY, JR.**                          **DEFENDANT/COUNTER-CLAIMANTS**
                                                      **THIRD-PARTY PLAINTIFFS**

**HYUNDAI MOTOR AMERICA, INC.**                    **THIRD-PARTY DEFENDANT**

<u>**ORDER**</u>

Pending is Plaintiff Hyundai Motor Finance Company's ("Hyundai Finance") Motion for

Partial Summary Judgment (Doc. No. 76), to which Defendants/Third-Party Plaintiffs McKay

Motors I, LLC ("McKay Motors") and John P. McKay, Jr. ("McKay") have responded (Doc. No.

93).  For the reasons set out below, the Motion is DENIED.

**I.      BACKGROUND**

In September 2004, McKay purchased a Hyundai dealership from Sidney Moncrief and

began operating a franchise from Hyundai Motor America, Inc. in Pine Bluff, Arkansas.  The

land used by the dealership was rented and subject to a temporary month-to-month lease.[1]

At the time the franchise was granted, Hyundai Motor America offered a program called

the "Exclusive Facilities Program" ("Program").  The Program provided business financing

through Hyundai Finance, including real estate loans, to dealers whom exclusively sold Hyundai

products.[2]

---

[1]Doc. No. 93.

[2]*Id.*

1

The owner of the land where the dealership was located told McKay that he had a party interested in purchasing the land.  Concerned that the dealership might be displaced by the new landlord, McKay discussed purchasing the land with Richard Roas of Hyundai Financial.  In December 2005, McKay was given the option to purchase the property from the owner.[3]

McKay submitted his application to Hyundai Finance for a permanent real estate loan in April 2006.  Mr. Roas told McKay that the purchase of the land would qualify for 100% financing under the Program since McKay was subject to a temporary lease.[4]  However, Mr. Roas informed McKay that Hyundai Finance could not close the loan as quickly as McKay needed so McKay should seek interim financing to buy the property where the dealership was located.[5]  According to McKay, he relied on Mr. Roas's statement and obtained a 6-month line of credit for $1,500,000 from Bank of Little Rock.[6]  As a condition of the interim loan, Bank of Little Rock filed liens on the dealership property and four additional personal assets in the McKay family trust.[7]  McKay told a Hyundai Financial representative, Alice Yang, that the interim loan was secured by assets that could provide additional capital for the dealership.

On January 7, 2005, McKay Motors and Hyundai Finance executed an inventory loan and security agreement ("Agreement").  In the Agreement, Hyundai Finance agreed to extend credit to McKay Motors so McKay could purchase new and used vehicles.  McKay Motors

---

[3]Doc. No. 93 Ex. A.

[4]Doc. No. 93.

[5]*Id.*

[6]*Id.* The line of credit's original maturity date was July 10, 2006; however, it could be extended through the end of August 2006 so long as Hyundai Motors Finance Company would commit to financing the real estate.

[7]*Id.*

agreed to repay Hyundai Finance the amount advanced when each financed vehicle was sold. McKay also personally guaranteed the obligations of McKay Motors to Hyundai Finance under a guaranty agreement.[8]

On July 12, 2006, Hyundai Finance sent the first loan commitment letter committing to provide a loan to purchase the real estate.[9]

On July 19, 2006, Hyundai Finance discovered that McKay Motors had sold vehicles subject to the Agreement but failed to pay the proceeds to Hyundai Finance as contracted.[10] When a dealer sells vehicle inventory subject to an inventory loan and security agreement, like the one here, and fails to remit the required proceeds to the inventory lender, it is called "selling out of trust." As a result, Hyundai Finance sent a demand letter on July 19, 2006 asking McKay for immediate payment of the "sold out of trust" balance of $228,246.00.[11] After receiving the demand letter, McKay informed Hyundai Finance that he could not make immediate payment because his assets were tied up in the loan provided by Bank of Little Rock. McKay then explained that the Bank of Little Rock would provide $500,000 line of credit if Hyundai Finance paid off the interim loan.[12]

On August 1, 2006, Hyundai Finance sent another demand letter to McKay asking for immediate payment of the "sold out of trust" balance which had risen to $362,543.18.[13] Again,

---

[8]Doc. No. 97.

[9]Doc. No. 93.

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*Id.*

McKay informed Hyundai Finance that he was unable to obtain any proceeds to pay to the balance because his assets were tied up in the loan provided by Bank of Little Rock.

On September 1, 2006, Hyundai Finance sent a second loan commitment letter to McKay, and on September 8, 2006, a third and final commitment letter was sent stating that the closing was to occur on or before October 18, 2006. The commitment letter required McKay to have $400,000 in cash in the bank at the time of closing to satisfy the "sold out of trust" balance and a $500,000 line of credit from the Bank of Little Rock for recapitalization of the dealership.[14]

Closing, however, did not occur on October 18, 2006. According to Hyundai Finance, McKay's previous attorney could not gather the information needed in time while McKay contends that "all decisions on extending the close date were made unilaterally"[15] by Hyundai Finance. In any event, on December 14, 2006 after several delayed closing attempts, Hyundai Finance stated that McKay did not have the resources needed to close the loan and the "sold of trust balance" had risen to $545,103.63, including interest.[16]

McKay argues that he had the financial ability to meet the above requirements at the time of the scheduled closing in October 2006. McKay claims that the "documents and facts clearly show that McKay would have satisfied the sold out of trust amounts if the loan closed in October 2006 as contracted."[17] However, Hyundai Finance contends that on October 18, 2006, the

---

[14]*Id.*

[15]*Id.*

[16]Doc. No. 97.

[17]Doc. No. 93. McKay states that if he sold the assets from his wife's trust he could have generated in excess of $400,000 in order to satisfy the sold out of trust balance claimed by Hyundai Finance.

scheduled closing date, McKay's balance in Bank of Little Rock had dropped below $400,000, as required, to $332,030.69 [18]

On December 20, 2006, Hyundai Finance filed this action against McKay and Motor Motors seeking money damages and replevin of the collateral of Hyundai Finance.[19]  At the time the complaint was filed, McKay and McKay Motors owed an amount equal to but not less than $1,456,353.85.[20]

After several replevin hearings, an Order was entered on May 1, 2007 which directed McKay and McKay Motors to deliver motor vehicles to Hyundai Finance and authorized Hyundai Finance to liquidate them under the Uniform Commercial Code.[21]  Hyundai Finance was to apply the net proceeds to the debt owned by McKay and McKay Motors.

On May 8, 2006, another Order was entered directing McKay and McKay Motors to make available to or deliver into the possession of Hyundai Finance (1) all personal property of McKay Motors held for sale or lease; and (2) all office furniture, shop equipment, computer equipment and records, tools, lease improvements, and other personal property owed by McKay Motors that Hyundai Finance claimed as its collateral.[22]  Again, the net proceeds of the liquidation were to be applied to the indebtedness owed to Hyundai Finance by McKay and McKay Motors.

---

[18]Doc. No. 97.

[19]Doc. No. 1.

[20]Doc. No. 78.

[21]Doc. No. 51.

[22]Doc. No. 53.

The collateral was sold at auction, but it did not satisfy the balance owed.  A deficiency of $608,694.26 plus $210,462.55 of interest remained.[23]  Hyundai Finance now moves for summary judgment and contends that there is no genuine issue of material fact as to whether McKay is indebted to Hyundai Finance for the deficiency of the balance.[24]  McKay argues that Hyundai Finance failed to mitigate its damages and prevented performance creating genuine issue of material fact.[25]

## II.      STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[26]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[27]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[28]  Nevertheless, summary judgment promotes judicial economy by

---

[23]Doc. No. 78.

[24]Doc. No. 77.

[25]Doc. No. 93.

[26]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[27]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[28]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

preventing trial when no genuine issue of fact remains.[29]  I must view the facts in the light most favorable to the party opposing the motion.[30]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[31]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[32]

## III.   DISCUSSION

Plaintiff Hyundai Finance contends that there is no genuine issue of material fact as to whether Defendants McKay and McKay Motors are indebted to Hyundai Finance for the amount of deficiency under the Agreement.  Defendants argue that there are material issues of fact since (1) Hyundai Finance failed to mitigate damages, (2) Hyundai Finance could have avoided the consequences of Defendants' breach, and (3) impossibility of performance due to Hyundai Finance's actions.

---

[29]*Id.* at 728.

[30]*Id.* at 727-28.

[31]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[32]*Anderson*, 477 U.S. at 248.

Defendants McKay and McKay Motors argue that the doctrine of avoidable consequences is applicable.  The doctrine of avoidable consequences limits the amount of recoverable damages that could have been avoided.[33]  Under this doctrine, one is required only to take such steps as may be taken at small expense or with reasonable exertion to mitigate his damages, and where the expense is so large as to make the requirement impractical, the doctrine has no application.[34]  Reasonable diligence and ordinary care are all that are required.[35]  In most cases, whether one acted reasonably in minimizing, mitigating, or avoiding damages is a question of fact.[36]

The burden of proving that a non-breaching party could have avoided some or all of the damages by acting prudently rests on the breaching party, not only on the question of causation of damages for failure to avoid harmful consequences, but also on the question of the amount of damages that might have been avoided.[37]

McKay argues that Hyundai Finance knew that it was relying on Hyundai Finance's financing to purchase of the real estate, and when the parties failed to close the transaction, Hyundai Finance "jerked away McKay's last ability to resolve the sold out of trust deficiency and allowed Hyundai Finance to create the basis for this action."[38]  McKay contends that if Hyundai Finance honored its commitment letters by closing in October, McKay would have

---

[33]*Lake Village Implement Company, Inc. v. Cox*, 478 S.W.2d 36, 42 (Ark. 1972).

[34]*Id.*

[35]*Id.*

[36]*Quality Truck Equipment Co. v. Layman*, 912 S.W.2d 18, 21 (Ark. App. 1995).

[37]*Bill C. Harris Construction Co. v. Powers*, 554 S.W.2d 332, 336 (Ark. 1977).

[38]Doc. No. 93.

been able to satisfy his contractual obligations. Further, the decisions to extend the closing date beyond October, according to McKay, were unilaterally made by Hyundai Finance.  By not completing its commitment to provide permanent financing, McKay contends that Hyundai Finance failed to mitigate its damages because it prevented them from being able to pay the sold out of trust balance.

Moreover, McKay argues that if Hyundai Finance had told McKay in September or October that it would not make the loan, McKay could have used the $400,000 he had in Bank of Little to satisfy his obligations.

Hyundai Finance contends that the facts establish that they made reasonable efforts to close the loan, but because of circumstances beyond their control, it was unable to close. However, since the question of whether one acted reasonably in minimizing, mitigating, or avoiding damages is a question fact, summary judgment is inappropriate at this time. Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED.

## IV.     CONCLUSION

For the above stated reasons, Plaintiff Hyundai Finance's Motion for Partial Summary Judgment (Doc. No. 76) is DENIED.

IT IS SO ORDERED this 10th day of June, 2008.

/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE